UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------X
                              :
ROBERT J. IVANHOE and ANNE    :
G. IVANHOE                    :    Civil No. 3:20CV00148(SALM)
                              :
v.                            :
                              :
UNITED STATES OF AMERICA      :    July 28, 2022
                              :
-----------------------------X
```

**RULING ON DEFENDANT'S MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT [Doc. #30] AND
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [Doc. #29]**

Plaintiffs Robert J. Ivanhoe and Anne G. Ivanhoe ("plaintiffs" or "the Ivanhoes") bring this action against the United States of America ("defendant" or "USA") for recovery of federal income tax. The Ivanhoes allege that the assessment of additional tax liability for tax year 2012 by the Internal Revenue Service ("IRS") was "erroneously or illegally assessed and collected." Doc. #8 at 1.

Pursuant to Federal Rule of Civil Procedure 56(a), plaintiffs move for summary judgment. See Doc. #29. Defendant moves for dismissal under Rules 12(b)(1), 12(b)(2),[1] and 12(b)(6), or, in the alternative, for summary judgment pursuant

---

[1] Defendant's motion to dismiss states that it is brought pursuant to "Rules 12(b)(1), 12(b)(2), and 12(b)(6)[,]" Doc. #30 at 1, however, defendant's memorandum of law does not address Rule 12(b)(2). Accordingly, the Court considers any 12(b)(2) argument abandoned.

1

to Rule 56(a). <u>See</u> Doc. #30. For the reasons set forth below, defendant's motion to dismiss [**Doc. #30**] is **GRANTED**, and plaintiffs' motion [**Doc. #29**] is **DENIED, as moot.**[2]

I.   <u>**LEGAL STANDARD -- Rule 12(b) Dismissal**</u>

"The United States moves to dismiss the plaintiffs' refund claim under Rule 12(b)(1), Rule 12(b)(6), and sovereign immunity[.]" Doc. #30-1 at 14.

As an initial matter, the Court must determine whether review is appropriate under Rule 12(b)(1) or Rule 12(b)(6). "The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." <u>Feldheim v. Fin. Recovery Servs., Inc.</u>, 257 F. Supp. 3d 361, 365 (S.D.N.Y. 2017) (citation and quotation marks omitted). However, "there is a key distinction in that evidence outside the pleadings may, if necessary, be considered under Rule 12(b)(1), but not under 12(b)(6), unless the Court converts the motion into one for summary judgment." <u>Mercer v. Schriro</u>, 337 F. Supp. 3d 109, 122 (D. Conn. 2018).

Because defendant seeks dismissal on sovereign immunity grounds, review is appropriate under Rule 12(b)(1). <u>See</u>, <u>e.g.</u>,

---

[2] As will be discussed in detail herein, the Court finds that dismissal is appropriate pursuant to Rule 12(b)(1). Accordingly, the Court will not address the parties' summary judgment arguments or the standard applicable to summary judgment.

Cangemi v. United States, 13 F.4th 115, 134 (2d Cir. 2021)
("Because the district court dismissed Plaintiffs' tort claims
against the United States ... on sovereign immunity grounds,
that was a jurisdictional dismissal under Rule 12(b)(1).");
Morabito v. New York, 803 F. App'x 463, 465 n.2 (2d Cir.
2020), as amended (Feb. 27, 2020), cert. denied, 141 S. Ct. 244
(2020), reh'g denied, 141 S. Ct. 886 (2020) ("Although the
district court characterized its dismissal as falling under Rule
12(b)(6), it is more appropriately characterized as a dismissal
under Rule 12(b)(1), as it was based on sovereign immunity.");
Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007)
("[W]here a waiver of sovereign immunity does not apply, a suit
should be dismissed under Fed. R. Civ. P. 12(b)(1) and not Fed.
R. Civ. P. 12(b)(6) for failure to state a claim[.]").

        "Under Rule 12(b)(1), a district court must dismiss an
action or claim for lack of subject matter jurisdiction 'when
the district court lacks the statutory or constitutional power
to adjudicate it.'" Mercer, 337 F. Supp. 3d at 122 (quoting
Makarova v. United States, 201 F.3d 110, 112 (2d Cir. 2000)).

        In a motion to dismiss pursuant to Fed. R. Civ. P.
        12(b)(1), the defendant may challenge either the legal
        or factual sufficiency of the plaintiff's assertion of
        jurisdiction, or both. How the district court proceeds
        to resolve the motion to dismiss depends upon whether
        the motion presents a factual challenge. If the
        defendant challenges only the legal sufficiency of the
        plaintiff's jurisdictional allegations, the court must
        take all facts alleged in the complaint as true and draw

> all reasonable inferences in favor of plaintiff[.] But where evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence.

Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001) (citations and quotation marks omitted). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (citation and quotation marks omitted).

"[T]he party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. (citation and quotation marks omitted). Because "[t]he doctrine of sovereign immunity is jurisdictional in nature, ... plaintiff[s] bear[] the burden of establishing that [their] claims fall within an applicable waiver." Makarova, 201 F.3d at 113.

## II.   **BACKGROUND**

### A.   **Procedural Background**

Plaintiffs filed this action on February 3, 2020. See Doc. #1. On February 7, 2020, plaintiffs filed an Amended Complaint. See Doc. #8. On February 26, 2020, plaintiffs filed a return of service stating that defendant was served at 135 High Street, Hartford, CT. See Doc. #9 at 1. On April 1, 2020, counsel for

defendant filed an appearance. See Doc. #10. On that same date, defendant filed a "Stipulation Regarding Service Upon the United States of America[,]" stating that there is an IRS office located at 135 High Street, Hartford, CT, but that defendant was not properly served because "service is effected upon the United States by delivering the summons and complaint to the United States Attorney's Office in the district where the action is brought and by mailing a copy of both the summons and complaint to the Attorney General of the United States in Washington, D.C." Doc. #11 at 1 (citing Fed. R. Civ. P. 4(i)(1)) (capitalizations removed). Defendant "agree[d] to waive formal service of the summons and complaint as of" that date, and "[t]he parties stipulate[d] that the start date of the 60-day period for the United States to respond to the amended complaint" was the date of the filing of that stipulation, April 1, 2020, and defendants' response was therefore due on June 1, 2020. Id. at 1-2. On April 7, 2020, Judge Michael P. Shea, the then-presiding Judge, entered an order acknowledging the parties' stipulation and ordering defendant to "file a response to the complaint by 6/1/20." Doc. #12. On October 29, 2020, after having received two consented-to extensions of time, see Docs. #13, #14, #15, #16, defendant filed its Answer. See Doc. #17.

On January 13, 2021, Judge Shea entered a Scheduling Order that required any dispositive motions to be filed by November 1, 2021. See Doc. #20 at 1. On October 15, 2021, this case was transferred to the undersigned "for all further proceedings." Doc. #25.

On November 15, 2021, after having received an extension of time, see Doc. #28, the parties filed the instant dispositive motions. See Docs. #29, #30. On December 17, 2021, again after having received an extension of time, see Doc. #32, the parties filed memoranda in opposition to the cross-motions. See Docs. #33, #34. On December 22, 2021, defendant filed a motion, with plaintiffs' consent, "to strike its earlier Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 34) ('Memorandum') and Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment (Doc. 34-1) ('Statement of Facts') (collectively, the 'Opposition') and substitute [revised] versions of the Memorandum and Statement of Facts[.]" Doc. #36 at 1. On that same date, the Court granted defendant's motion, see Doc. #37, and defendant filed its Amended Memorandum in Opposition. See Doc #38. On February 2, 2022, after having received an extension of time, see Doc. #43, the parties filed reply memoranda. See Docs. #44, #45.

**B.   The Partnership Structure**

This matter concerns three separate entities: Stellar GT
Promote ("Promote"), Stellar Member ("Stellar Member"), and
Stellar GT, LLC ("Stellar GT").[3] "During the 2012 calendar year,
plaintiff Robert J. Ivanhoe was a passive member in [Promote],
in which he owned a 2.5% interest." Doc. #33-1 at 1, 6.[4] During
2012, Promote "had a 55% interest in" Stellar and a "77.8%
interest in Stellar Member[.]" Id. at 1-2. Stellar Member, in
turn, had a 45% interest in Stellar. See id. at 2. Promote held
a 35.001% indirect interest in Stellar "through its 77.78%
interest in Stellar Member, which in turn held the remaining 45%
in Stellar." Id. Thus, Promote held a 90.001% interest in
Stellar, "consist[ing] of its direct 55% interest and its
indirect 35.001% interest[.]" Id.

---

[3] Doc. #33-1, cited to throughout this Ruling, is Plaintiffs'
Local Rule 56(a)(2) Statement of Facts in Opposition to Summary
Judgment. See Doc. #33-1 at 1. This document indicates which
material facts asserted by defendant are admitted by plaintiffs.
The Court cites only to Doc. #33-1 for ease of reference, but
each admitted fact is also stated in Doc. #30-2, Defendant's
Local Rule 56(a)(1) Statement of Material Facts. The Court finds
that the undisputed material facts admitted by plaintiffs in
Doc. #33-1 are the only facts outside the Complaint necessary
for resolution of defendant's motion to dismiss.

[4] In the parties' submissions, Robert Ivanhoe's ownership
percentage is referred to as 2.4%, 2.5%, and 2.40452%. See,
e.g., Doc. #33-1 at 5-6. This discrepancy does not impact the
Court's analysis, and therefore will not be addressed.

C.    **TEFRA Framework**[5]

The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") was enacted to, "among other things, centralize[] the treatment of many partnership taxation issues." Uniquest Delaware LLC v. United States, 294 F. Supp. 3d 107, 118 (W.D.N.Y. 2018) (citation and quotation marks omitted). With respect to partnership taxation, TEFRA gives the IRS the ability to make any necessary changes to treatment of partnership items at the partnership level, and determine each partner's tax liability based on the treatment of the partnership items at the partnership level. See id. at 118-19.

Under the Internal Revenue Code (the "IRC"), partnerships are not subject to income tax directly. See 26 U.S.C. §701 ("A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities."); 26 C.F.R. §1.701-1 ("Partners are liable for income tax only in their separate capacities. Partnerships as such are not subject to the income tax imposed by subtitle A but are required to make returns of income under the provisions of section 6031 and the regulations

---

[5] The parties agree that Promote was an entity "subject to the unified partnership audit litigation procedures (the 'TEFRA partnership procedures')." Doc. #33-1 at 6.

thereunder.").  "A partnership must report its tax items on an information return, and the partners must report their distributive shares of the partnership's tax items on their own individual returns[.]" Gen. Mills, Inc. v. United States, 957 F.3d 1275, 1278 (Fed. Cir. 2020) (citing 26 U.S.C. §6301(a), §702, §704).

> Prior to 1982, adjustments to the tax liability of the individual partners based on the operations of the partnership were determined at the individual partners' level. This resulted in duplication of administrative and judicial resources and sometimes in inconsistent results as between partners. ... To ameliorate these difficulties, Congress enacted [TEFRA].

Callaway v. Comm'r of Internal Revenue, 231 F.3d 106, 107-08 (2d Cir. 2000) (citations omitted).

"TEFRA comes into play when the IRS reviews a partnership's information return and disputes some aspect of it." Gen. Mills, 957 F.3d at 1278. "The TEFRA provisions establish a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." Callaway, 231 F.3d at 108.

"The determination whether an item is a 'partnership item' or a 'nonpartnership item' is the threshold question for the application of the TEFRA procedures." Id. Only "partnership items are subject to TEFRA's centralized audit procedures[.]" Id. "'Partnership items' are items whose treatment affects the entire partnership such as the partnership's income, gain, loss,

or credit, and so analyzing them at the partnership level makes
more sense than doing so partner-by-partner." <u>Gen. Mills</u>, 957
F.3d at 1278; <u>see also</u> 26 U.S.C. §6231(a)(3) (2002) ("The term
'partnership item' means, with respect to a partnership, any
item required to be taken into account for the partnership's
taxable year under any provision of subtitle A to the extent
regulations prescribed by the Secretary provide that, for
purposes of this subtitle, such item is more appropriately
determined at the partnership level than at the partner
level.").[6]

> Partnership-related matters are addressed in two stages
> under TEFRA: partnership level and then individual
> partner level. During the first stage, the IRS initiates
> a partnership-level proceeding to adjust partnership
> items reported on the partnership's information return.
> Each partner has the right to participate in the IRS's
> audit of the partnership's information return. A partner
> may waive this right and opt out of the partnership-
> level proceeding by entering into a binding settlement
> agreement with the IRS. Upon completion of the
> partnership-level proceeding, the IRS is required to
> mail to certain partners a copy of the resulting final
> partnership administrative adjustment, which notifies
> the partners of any adjustments to partnership items.

---

[6] In the Bipartisan Budget Act of 2015, Congress "reformed the
partnership auditing procedures[.]" <u>Gen. Mills</u>, 957 F.3d at 1279
n.1. However, "[t]he Bipartisan Budget Act is effective only for
partnership tax years beginning after December 31, 2017." <u>Id.</u>
This case concerns tax year 2012. Accordingly, the Court "is
limited to interpreting the TEFRA provisions as they existed
<u>before</u> the amendment." <u>Id.</u> (emphasis added). Any reference to a
version of a statute <u>other</u> than the current version of that
statute will include the year that version was enacted in the
citation.

> During the second stage, the results of the partnership-
> level proceeding are applied to the individual partners.
> In the partner-level proceeding, the IRS makes
> "computational adjustments" to each partner's return to
> reflect the adjustments to partnership items.

Gen. Mills, 957 F.3d at 1278-79 (citations and quotation marks
omitted).

### D.   Factual Background

"In resolving a motion to dismiss for lack of subject
matter jurisdiction under Rule 12(b)(1), a district court ...
may refer to evidence outside the pleadings." Makarova, 201 F.3d
at 113. "[A] defendant is permitted to make a fact-based Rule
12(b)(1) motion, proffering evidence beyond the Pleading."
Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir.
2016). The Court may "base[] its decision solely on the
allegations of the complaint and the undisputed facts evidenced
in the record." Trustees of Upstate N.Y. Engineers Pension Fund
v. Ivy Asset Mgmt., 843 F.3d 561, 566-67 (2d Cir. 2016)
(emphasis added). The following facts are derived from the
Amended Complaint (Doc. #8) and the undisputed facts in the
parties' submissions.

### 1.   Section 1231 Gain and 2012 Tax Returns

In 2012, Stellar GT recognized a section 1231 gain[7] of
$88,461,244. See Doc. #33-1 at 2; Doc. #30-4 at 7. Promote's

---

[7] Section 1231 governs gains and losses for "property used in the
trade or business[.]" 26 U.S.C. §1231(a)(3)(A)(i).

share of that gain was $79,494,545. See Doc. #33-1 at 4; Doc. #30-6 at 10. Promote's gain consisted of $48,580,162 realized through the direct interest it held in Stellar GT, see Doc. #33-1 at 3; Doc. #30-4 at 15, and $30,914,383 realized through the indirect interest it held in Stellar GT through Stellar Member. See Doc. #33-1 at 3; Doc. #30-5 at 39.

"Promote reported gain of $79,494,545 (the sum of $48,480,162 and $30,914,383) from the sale of business property in 2012 on its Form 4797, indicated as 'From K-1.'" Doc. #33-1 at 4. However, Promote only "reported $30,914,383 on Schedule K, Line 10, of its Form 1065 (as 'Net section 1231 gain (loss) (attach Form 4797)')[.]" Id.; see also Doc. #30-6 at 4, 10. The Net section 1231 gain reported, $30,914,383, differs from the gain reported on the Form 4797, $79,494,545, by $48,580,162. The parties disagree about the import of this difference. Defendant's position is that $48,580,162 was improperly omitted from Promote's 2012 return. See Doc. #33-1 at 4. Plaintiffs' position is that the $48,580,162 is not reflected on the Form 1065 because Promote realized a loss equal to $48,580,162 when it disposed "of its 55% membership interest in Stellar GT[,]" thus adjusting the basis of the Section 1231 gain. Doc. #33 at 14. Thus, plaintiffs assert that the adjusted basis allowed Promote to report a gain of only $30,914,383. However, the parties agree that Promote's return does not reflect the

$48,580,162 loss. See Doc. #33-1 at 4 ("There is no separately reported loss on Promote's return equal to anything close to the $48,580,162 difference between the $79,494,545 of gain reported on Form 4797 and the $30,914,383 of Net Section 1231 Gain on line 10 of Schedule K of its Form 1065[.]").

Promote issued Schedules K-1,[8] Partner's Share of Current Year Income, Deductions, Credits, and Other Items, to its partners, including Robert Ivanhoe. See Doc. #30-5 at 13-40. The Schedules K-1 issued by Promote flowed a gain of $30,914,383 to its partners, not $79,494,545, again resulting in a difference of $48,580,162, which "is the exact sum included on Stellar's Schedule K-1 issued to Promote[.]" Doc. #33-1 at 4. "On the 2012 Schedule K-1 that Promote issued to plaintiff Robert Ivanhoe, $743,344 of Net section 1231 gain was reported in Box 10." Id. at 5; see also Doc. #30-7 at 1. This amount, $743,344, reflects Robert Ivanhoe's 2.40452% share in Promote. See Doc. #33-1 at 5-6. Again, defendant asserts that the $48,580,162 was improperly omitted from the Schedules K-1, see Doc. #33-1 at 4, but plaintiffs maintain that it was properly not included. See id.

_____

[8] "'A Schedule K-1 is used as part of the tax return to report the partner's share of income, credits, deductions and other items resulting from the partnership.'" Soley v. Wasserman, No. 08CV09262(PAC), 2010 WL 931888, at *2 n.1 (S.D.N.Y. Mar. 12, 2010) (quoting Hansen v. Comm'r of Internal Revenue, 471 F.3d 1021, 1026 n.6 (9th Cir. 2006)).

at 5. Plaintiffs "filed their Form 1040 individual income tax return on October 13, 2013, electing married filing jointly[.]" Id.; see also Doc. #30-10 at 1-11. Their Form 1040 included the Schedule K-1 issued to Robert Ivanhoe that reported "$743,344 of Net section 1231 gain[.]" Doc. #33-1 at 5. "Neither Promote nor the Ivanhoes filed a Form 8082, Notice of Inconsistent Treatment, or equivalent notice, concerning tax year 2012." Id.[9]

2.   TEFRA Audit

"The IRS commenced an examination of the Form 1065, U.S. Return of Partnership Income, of Promote for the tax year ending December 31, 2012." Doc. #33-1 at 6. In a letter dated January 29, 2017, the IRS notified Promote that the TEFRA Audit had been concluded and that "no adjustments to [Promote's] return(s)[]"

---

[9] A Form 8082 is used to notify the IRS of inconsistent treatment of a partnership item or to request an administrative adjustment.

A taxpayer is instructed to file Form 8082 if "[y]ou believe an item was not properly reported on the Schedule K-1 you received from the partnership." IRS, Instructions for Form 8082, at 1 (rev. Dec. 2011) (available at https://www.irs.gov/pub/irs-prior/i8082--2011.pdf). The instructions for Form 8082 caution that "[i]f you do not notify the IRS that you are reporting an item ... inconsistently, any deficiency ... that results from a computational adjustment to make your amount or treatment of the item on the pass-through [partnership's] return may be assessed immediately." Id.

Gluck v. Comm'r of Internal Revenue, 129 A.F.T.R. 2d 2022-1103, 2022-1104 n.3 (2022).

were proposed, so "a Notice of Final Partnership Administrative Adjustment[]" would not be issued. Doc. #30-16 at 1; see also Doc. #33-1 at 9.

### 3. Notice of Computational Adjustment

While the TEFRA Audit of Promote was pending, "the IRS mailed a Notice of Computational Adjustment (Letter 4735)[,]" dated October 11, 2016, "to Robert and Anne Ivanhoe, pertaining to the examination of the 2012 return of a partnership that they were directly or indirectly invested in." Doc. #33-1 at 6; see also Doc. #30-12 at 1.

"The Notice included a Form 4549-A, Income Tax Discrepancy Adjustments, which detailed the changes made to the Ivanhoes' income tax liability as a result of the IRS examination of the partnership." Doc. #33-1 at 6; see also Doc. #30-12 at 3-9. "The attached Form 4549-A provided that, as a result of adjustments to capital gain income, the Ivanhoes had a balance due of $188,139.00." Doc. #33-1 at 7; see also Doc. #30-12 at 3, 9. In a letter dated October 11, 2016, signed by Internal Revenue Agent Paul Martineau, the IRS assessed interest of $31,553.44, reflecting a total balance due of $219,692.44. See Doc. #30-13 at 1-4; Doc. #33-1 at 7.[10] The Form 4549-A explains: "This adjustment is due to your inconsistent treatment of a

---

[10] $10,543.32 of the interest was later abated. See Doc. #33-1 at 10.

partnership item related to the Section 1231 gain reported by a partnership in which you have an indirect ownership. See [26 U.S.C.] §6222; Treas. Reg. §301.622(a)-1; Treas. Reg. §301-6222(a)-2." Doc. #30-12 at 9; see also Doc. #33-1 at 7.

The Notice of Computational Adjustment states:

> To dispute the computational adjustment made to your return or to assert partner-level defenses to any penalty imposed in this notice, you must pay the tax as adjusted in full, and then file a claim for refund at the address provided above within six months from the date of this letter. If you send your claim to an address other than the above address, processing will be delayed and your claim may be disallowed if received at the address specified in this letter after the end of the six-month period. You may file a refund suit as provided by law if your timely-filed refund claim is disallowed or not acted upon within six months after the date it is filed.

Doc. #30-12 at 2; see also Doc. #33-1 at 6.

"On October 18, 2016, Ira P. Hersh sent a letter to Supervisory Internal Revenue Agent Paul Martineau concerning Robert and Anne Ivanhoe's Form 1040 for tax year 2012." Doc. #33-1 at 8. The letter stated, in its entirety:

> We are in receipt of Notice of Computational Adjustment and Letter 3535 dated October 11, 2016.

> Form 4549-A, Income Tax Examination Changes, indicates an adjustment to income for capital gain, in the amount of $1,214,504, as a result of the examination of a partnership. The name of the partnership is omitted. There are no documents detailing the results of the audit of the partnership or acceptance by the partnership. When I attempted to call you this morning, I was informed that the contact telephone number is not in service.

Kindly forward to the taxpayers, the required
information, which is noted above.

Doc. #30-14 at 1. "On November 11, 2016, IRS Supervisory
Internal Revenue Agent Martineau sent a response letter to
Robert and Anne Ivanhoe, acknowledging the October 18th letter
from Ira Hersh." Doc. #33-1 at 8. That letter outlined the
details of how the IRS calculated the computational adjustment.
See id. at 8-9. "The Ivanhoes' additional tax liability became
fully paid as of February 12, 2018, after overpayment credits
from their 2015 and 2016 tax years were credited toward the
liability." Id. at 10.

### 4.   Plaintiffs' Refund Claim

"On May 9, 2018, the plaintiffs submitted a Form 843 Claim
for Refund and Request for Abatement." Id. "The Form 843 stated
that it pertained to tax year 2012 and sought a refund or
abatement of $214,147.92."[11] Id. The Form 843 further stated that
"the taxpayers filed their 2012 return consistent with the
return filed for Stellar GT Promote LLC." Doc. #30-11 at 2.

## III. DISCUSSION -- MOTION TO DISMISS

Defendant asserts that dismissal is appropriate because
"[t]he refund claim ... fits squarely within the ambit of 26

---

[11] The amount of the refund sought does not equal the amount of
tax assessed plus interest, minus the interest abatement. See
Doc. #30-13 at 1-4; Doc. #33-1 at 10. This discrepancy has no
impact on the Court's ruling, and so is not addressed herein.

U.S.C. §6230(c)(1)(A)(i), and needed to have met the six-month timing requirement of §6230(c)(2) in order for the Court to have jurisdiction to hear the claim." Doc. #30-1 at 14. Plaintiffs respond that "the adjustments proposed by the IRS were not 'computational adjustments[,]'" so "[26 U.S.C.] §6511(a) is applicable and Plaintiffs' Complaint was filed timely." Doc. #33 at 10.[12]

### A. Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999) (citation and quotation marks omitted). "The government has" waived sovereign immunity "broadly with respect to federal income tax refund actions." Monti v. United States, 223 F.3d 76, 78 (2d Cir. 2000). "There

---

[12] 26 U.S.C. §6511(a) states:

> **(a) Period of limitation on filing claim.** -- Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

26 U.S.C. §6511(a).

are certain kinds of refund actions, however, with respect to which the government has not waived sovereign immunity." Id. Regarding partnership items, the Internal Revenue Code specifies: "No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." 26 U.S.C §7422(h) (1998).

Section 6230(c) provides, in relevant part:

**(c) Claims arising out of erroneous computations, etc.--**
> **(1) In general.** -- A partner may file a claim for refund on the grounds that --
>> **(A)** the Secretary erroneously computed any computational adjustment necessary --
>>> **(i)** to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or
>>> **(ii)** to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a),
>
> ...
>
>> **(C)** the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.
>
> **(2) Time for filing claim. --**
>> **(A)** Under paragraph (1)(A) or (C). -- Any claim under subparagraph (A) or (C) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.
>
> ...

> **(3) Suit if claim not allowed.** -- If any portion of
> a claim under paragraph (1) is not allowed, the
> partner may bring suit with respect to such portion
> within the period specified in subsection (a) of
> section 6532 (relating to periods of limitations on
> refund suits).

26 U.S.C. §6230(c), repealed by Bipartisan Budget Act of 2015,
Pub. L. No. 114-74, 129 Stat. 584.

A "partnership item" is defined as "any item required to be
taken into account for the partnership's taxable year under any
provision of subtitle A to the extent regulations prescribed by
the Secretary provide that, for purposes of this subtitle, such
item is more appropriately determined at the partnership level
than at the partner level." 26 U.S.C. §6231(a)(3) (2002). IRS
regulations provide a list of items considered to be partnership
items. See 26 C.F.R. §301.6231(a)(3)-1(a)(1). Notably, "[t]he
partnership aggregate and each partner's share of ... [i]tems of
income, gain loss, deduction, or credit of the partnership[]"
are considered to be partnership items. 26 C.F.R.
§301.6231(a)(3)-1(a)(1)(i). Defendants assert that Promote's Net
section 1231 gain resulting from the sale of business property
is a partnership item, and plaintiffs do not dispute this
assertion. See Doc. #30-1 at 14; see also Doc. #33 at 11-12
(referring to the gain as a "partnership item"). Accordingly,
the government has waived sovereign immunity with respect to
plaintiff's claim as outlined in Section 6230(c) only if the IRS

assessed the additional tax liability through a computational adjustment.

### B.   Computational Adjustment

The core of the parties' dispute is whether the additional tax assessed by the IRS for tax year 2012 is properly characterized as a computational adjustment. This characterization is significant because the IRC imposes a specific process for challenging a computational adjustment, including a six month time limitation. See 26 U.S.C. §6230(c); see also infra Section III.C.

In general, "[a] partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return." 26 U.S.C. §6222(a). "[I]f a partner treats items inconsistently with the partnership's treatment of those items, a deficiency may be assessed against the partner without notice, as a 'computational adjustment.'" Callaway, 231 F.3d at 109.

> The term 'computational adjustment' means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

26 U.S.C. §6231(a)(6) (2002).

The treasury regulations specify that "[t]he consistent reporting requirement of §301.6222(a)-1 is generally applied

with respect to the source partnership." 26 C.F.R. §301.6222(a)-2(a). The "source partnership" is "the partnership (within the meaning of section 6231(a)(1) from which the partnership item originates." Id. A partner can "satisf[y] the consistency requirement of section 6222(a)" by treating the partnership item "in a manner consistent with the treatment of that item on the source partnership's return[.]" 26 C.F.R. §301.6222(a)-2(b). However, to avoid a computational adjustment, an indirect partner who "[t]reats an item from a source partnership in a manner inconsistent with the treatment of that item on the source partnership's return[]" must "notif[y] the Internal Revenue Service of inconsistency." 26 C.F.R. §301.6222(a)-2(c).

Defendant asserts that the additional tax assessed was the result of a computational adjustment because the "refund claim is attributable to partnership items[.]" Doc. #30-1 at 18. Plaintiffs do not argue that the adjustment was not attributable to a partnership item. See Doc. #33 at 11-12 (referring to the gain as a "partnership item"). Here, the "partnership item" at issue is the $88,461,244 gain realized by Stellar GT due to the sale of business property. See Doc. #30-4 at 20-21. Because this partnership item originated from Stellar GT, Stellar GT is the "source partnership." 26 C.F.R. §301.6222(a)-2(a). For tax year 2012, Stellar GT reported a "Net section 1231 gain" of $88,461,244. Doc. #30-4 at 7. Stellar GT then issued Schedules

K-1 to Promote and Stellar Member, identifying their respective shares of that gain as $48,580,162 and $39,881,082. See id. at 13, 15. Stellar Member then issued a Schedule K-1 to Promote, identifying Promote's pass-through share as $30,914,383. See Doc. #30-5 at 39. Thus, Promote's share of the $88,461,244 gain totaled $79,464,545. However, Promote reported a "Net section 1231 gain" of $30,914,383. Doc. #30-6 at 4.

During tax year 2012, plaintiff Robert Ivanhoe owned a direct interest in Promote. See Doc. #33-1 at 5-6. Promote, in turn, owned both a direct interest in Stellar GT, and an indirect interest, through Stellar Member, in Stellar GT. See id. at 1-2. Thus, Robert Ivanhoe owned a direct interest in Promote and indirect interests in both Stellar Member and Stellar GT. Because Robert Ivanhoe was an indirect partner in Stellar GT, he was required to treat the partnership item -- the $88,461,244 gain -- in a manner consistent with the way Stellar GT, the source partnership, treated it. See 26 U.S.C. §6222(a); 26 C.F.R. §301.6222(a)-2(b).

Defendant states that "the IRS made the computational adjustment to the Ivanhoes' return because of their 'inconsistent treatment of a partnership item related to the Section 1231 gain reported by' Stellar [GT]." Doc. #30-1 at 18 (citation and quotation marks omitted). Defendant explains that "[t]he computational adjustment represented the addition[al]

23

Section 1231 gain from Stellar [GT] that was reported by Promote on its Form 4797 but was not flowed through to Promote's partners, who held indirect interests in Stellar [GT] through Promote." Id. at 18-19. Plaintiffs respond that the IRS's adjustment was not a computational adjustment because: "There was no inconsistent treatment permitting a computational adjustment as the Stellar Promote 2012 Form 1065 properly reflected all gain realized in 2012 by Stellar Promote (on a Form 4797) and properly reflected the amount of gain to be allocated to its members, including Taxpayers (on a Schedule K)." Doc. #33 at 11. Plaintiffs also reference the IRS's issuance of a "No Adjustments Letter" to Promote, arguing that the IRS could not have issued a computational adjustment to the Ivanhoes because it did not make any adjustments to Promote's return. See id. at 12.

There is no dispute that plaintiffs' return was consistent with Promote's return. Promote issued a Schedule K-1 to Robert Ivanhoe that identified his share of Net section 1231 gain as $743,344, representing approximately 2.5% (Robert Ivanhoe's ownership share in Promote) of the $30,914,383 that Promote reported as its Net section 1231 gain. See Doc. #33-1 at 5-6; Doc. #30-15 at 1-2 (letter from Paul Martineau, Supervisory Internal Revenue Agent, acknowledging that plaintiffs reported the $743,344 gain, and that the gain omitted was due to the gain

being omitted by Promote). However, because Robert Ivanhoe was an indirect partner in Stellar GT, the source partnership, the focus is on whether plaintiffs' treatment of the partnership item was consistent with Stellar GT. See 26 C.F.R. §301.6222(a)-2(b) (requiring that an indirect partner treat partnership items consistently with the source partnership); cf. Cemco Invs., LLC v. United States, No. 04CV08211(JBG), 2007 WL 951944, at *7 (N.D. Ill. Mar. 27, 2007), aff'd, 515 F.3d 749 (7th Cir. 2008) (finding that "the consistent reporting provisions of Treas. Reg. §301.6222(a)-2T d[id] not apply[]" where plaintiff "did not hold an indirect interest" in the source partnership (emphasis added)). Robert Ivanhoe's return is consistent with Promote's return, and Promote's return is inconsistent with Stellar GT's return; Robert Ivanhoe's return is therefore inconsistent with Stellar GT's return.

"In determining whether an assessment is a computational adjustment, 'the inquiry is whether the assessments taxed the appropriate ownership percentage of the partnership income reported on the partnership return, as adjusted by the administrative adjustment.'" Bahar v. United States, No. 08CV04738(WHP), 2009 WL 1285946, at *5 (S.D.N.Y. May 4, 2009) (quoting Randell v. United States, 64 F.3d 101, 108 (2d Cir. 1995)). Robert Ivanhoe's ownership percentage in Promote was approximately 2.5%. Thus, Robert Ivanhoe's share of the

$79,464,545 gain that passed from Stellar GT to Promote was approximately $1,957,858. However, Robert Ivanhoe reported his share of the gain as $743,344, thereby reporting a gain that was inconsistent with his indirect ownership percentage in Stellar GT. As defendant points out, "[t]his is quintessential inconsistent treatment and justifies direct assessment by computation adjustment under 26 C.F.R. §301.6222(a)-2(c)(2)[.]" Doc. #45 at 6; see also Callaway, 231 F.3d at 109 ("[I]f a partner treats items inconsistently with the partnership's treatment of those items, a deficiency may be assessed against the partner without notice, as a 'computational adjustment.'"). Thus, the IRS issued a computational adjustment to "tax[] the appropriate ownership percentage of the partnership income" reported on Stellar GT's return. Bahar, 2009 WL 1285946, at *5 (citation and quotation marks omitted).

Despite this readily apparent inconsistency, plaintiffs make the conclusory assertion that their "return was consistent with both the Stellar GT return and the Stellar Promote return." Doc. #33 at 13. Plaintiffs contend that "the Schedule K properly showed the net amount of the gain that was to be allocated to the members of Stellar Promote ($30,914,38)." Id. at 12. Plaintiffs assert that this amount was proper because Promote realized a loss "with respect [to] its membership interest in Stellar GT." Id. Plaintiff contends that "Stellar Promote's

26

outside tax basis in its interest in Stellar GT was $48,580,162." Id. at 15. If this is accurate, Promote would not recognize any gain on the sale of the property because the gain is reduced by the basis: The $48,580,162 gain reflected on the K-1 from Stellar GT to Promote minus the $48,580,162 basis would result in a capital gain of zero. See Stobie Creek Invs. LLC v. United States, 608 F.3d 1366, 1370 (Fed. Cir. 2010) ("The goal of the J & G strategy was to reduce the capital gain resulting from the sale of assets. The strategy reduced a taxpayer's capital gain by increasing, or 'stepping up,' the basis in the asset the taxpayer wanted to sell. Because a partnership does not pay taxes, the resulting stepped-up basis passes through to the partners, thereby reducing the partner's capital gain and attendant capital gains tax when the asset is sold."). The Court need not, and will not, evaluate the merits of this assertion. The accuracy of the computational adjustment is not at issue at this stage; the Court's inquiry is limited to whether the action taken by the IRS constituted a computational adjustment.[13]

---

[13] Plaintiffs' assertion that there is an explanation for why plaintiffs treated the Net section 1231 gain in a manner inconsistent with Stellar GT does not change the result that the IRS's adjustment was a computational adjustment based on the facial inconsistency between plaintiffs' return and Stellar GT's return. As defendant points out, plaintiffs had ample opportunity to follow IRS procedures to notify the IRS why the $48,580,162 was not reflected on Promote's 1065 or on the Ivanhoe's return, but did not do so. See Doc. #45 at 7.

Plaintiffs further assert that the IRS was not permitted to
issue a computational adjustment to the Ivanhoes after issuing a
No Adjustments Letter to Promote. See Doc. #33 at 7-8 ("Despite
the issuance of a No Adjustment Letter after the completion of
the examination of the 2012 tax return filed by Stellar Promote,
the IRS issued to Taxpayers a Notice of Computational Adjustment
pursuant to Treas. Regs. §301.6222(a)-2(d) that, in essence,
adjusted the 2012 tax return filed by Stellar Promote and
summarily adjusted the 2012 tax return filed by Plaintiffs
resulting in the assessment of additional taxes that are the
subject of these proceedings[.]"). Defendant responds that
plaintiffs' argument "conveniently overlooks the fact that the
Federal Circuit held the exact opposite in Bush v. United
States[.]" Doc. #45 at 6 n.2 (citing 655 F.3d 1323, 1329 (Fed.
Cir. 2011)). The Court agrees. Plaintiffs cite no authority to
support their assertion that the IRS's issuance of a No
Adjustments Letter to Promote precludes the IRS from issuing a
computational adjustment with respect to plaintiffs' return.[14] To
the contrary, courts have explicitly held that the IRS is not
required to adjust the treatment of a partnership item at the

_____

[14] In fact, the Court notes that plaintiffs' opposition
memorandum does not cite a single case in support of their
argument that their claim was filed timely. See generally Doc.
#33 at 9-13. This lack of authority suggests that plaintiffs'
position on this point is without merit.

partnership level prior to issuing a computational adjustment at the partner level. See Bush, 655 F.3d at 1331 ("Nothing about this regulation requires that a computational adjustment involve a change in treatment of a partnership item. While it shows that a computational adjustment may (and often does) result from a change in treatment of a partnership item, nothing in the regulation demands that this be the only scenario."); Herrmann v. United States, 124 Fed. Cl. 56, 61 (2015) (acknowledging that "the IRS made a computational adjustment to [plaintiffs'] 2008 U.S. tax return, [but] did not make any partnership-level adjustments as a result of the audit[]"). Thus, plaintiffs' argument that the issuance of a No Adjustments Letter to Promote precludes the IRS from issuing a computational adjustment to their return similarly lacks merit.

Accordingly, the Court finds that the IRS's adjustment to plaintiffs' 2012 tax return is properly characterized as a computational adjustment, attributable to a partnership item.

### C.   Timeliness of Plaintiffs' Claim

Finally, the Court turns to the timeliness of plaintiffs' claim. "Under TEFRA, if the IRS erroneously computes the adjustment, the taxpayer must file a refund claim within six months after the IRS mails a notice of computational adjustment to the partner." Duffie v. United States, 600 F.3d 362, 385 (5th Cir. 2010). The IRC states: "No action may be brought for a

refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." 26 U.S.C. §7422(h) (1998). That is, a partner who has grounds to assert that the computational adjustment made to his return was erroneous must file his refund claim in accordance with 26 U.S.C. §6230(c). See id.; see also 26 U.S.C. §6230(c). Such refund claims must be filed "within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." 26 U.S.C. §6230(c)(2)(A).[15]

The "Notice of Computational Adjustment" sent to plaintiffs, dated October 11, 2016, stated:

> To dispute the computational adjustment made to your return or to assert partner-level defenses to any penalty imposed in this notice, you must pay the tax as adjusted in full, and then file a claim for refund at the address provided above within six months from the date of this letter. If you send your claim to an address other than the above address, processing will be delayed and your claim may be disallowed if received at the address specified in this letter after the end of the six-month period. You may file a refund suit as provided by law if your timely-filed refund claim is disallowed or not acted upon within six months after the date it is filed.
>
> If you believe that the calculation of the computational adjustment is wrong because of a mathematical error, please contact us. You do not have to pay the tax in order to discuss issues related to the calculation of the liability. You may call the person whose telephone number and contact hours are shown above or write that person at the IRS address at the top of this letter.

---

[15] In limited circumstances, none of which are applicable here, these refund claims must be filed within two years. See 26 U.S.C. §6230(c)(2)(B).

30

> Additionally, if you have any other questions about this notice, contact the person listed on this form as they will be most familiar with your case. If you do not contact us concerning any mathematical errors related to this liability within six months from the date of this letter, your failure to contact us may preclude you from raising these issues during any later collection due process proceedings.

Doc. #30-12 at 2 (emphasis added).

Six months from the date of the letter, October 11, 2016, was April 11, 2017. Despite the explicit notification that a refund claim must be filed within six months of the date on the Notice of Computational Adjustment, plaintiffs filed their refund claim on May 9, 2018. See Doc. #33-1 at 10. Plaintiffs' refund claim stated: "[T]he taxpayers filed their 2012 return consistent with the return filed for Stellar GT Promote LLC." Doc. #30-11 at 2. Although plaintiffs attempt to argue that the adjustment was not a computational adjustment at all, their "real complaint is with the terms of the computational adjustment. However, any attempt to challenge the computational adjustment as erroneously computed must be filed within six months." Bush v. United States, 106 Fed. Cl. 563, 570 n.9 (2012). Thus, plaintiffs' refund claim was untimely. "Since [plaintiffs] did not file a timely claim for refund, this refund suit must be dismissed for lack of subject matter jurisdiction. Any action barred by the doctrine of sovereign immunity must be dismissed for lack of subject matter

jurisdiction." <u>Bob Hamric Chevrolet, Inc. v. U.S. I.R.S.</u>, 849 F. Supp. 500, 509 (W.D. Tex. 1994).

## IV.  <u>CONCLUSION</u>

For the reasons set forth herein, defendant's Motion to Dismiss or for Summary Judgment [**Doc. #30**] is **GRANTED**. Because the Court finds that dismissal is appropriate under Rule 12(b)(1), it need not, and does not, address the parties' summary judgment arguments. Accordingly, plaintiffs' Motion for Summary Judgment [**Doc. #29**] is **DENIED, as moot.**

Judgment shall enter in favor of defendant.

The Clerk shall close this case.

It is so ordered this 28th day of July, 2022, at Bridgeport, Connecticut.

    /s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
